**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

02 MAY 31  PM 3: 01

CLARENCE HADDOX
CLERK U. S. DIST. CT.
S.D. OF FLA - MIA

**CASE NO.:    00-6309-CR-SEITZ/GARBER**



UNITED STATES OF AMERICA,

       **Plaintiff,**

v.

JACOLYN BARUCH,

       **Defendant.**

_____/

## NOTICE OF REQUEST FOR DEPARTURE
## FROM SENTENCING GUIDELINES

Pursuant to Southern District of Florida Local Rule 88.8(5), JACOLYN

BARUCH ("Baruch"), will be asking the Court to depart downward from the sentencing

guideline recommended by the Presentence Investigation Report ("PSI"). The PSI in this

case did not identify any mitigating circumstances that might warrant a departure from

the guidelines. The sentencing court has discretion to impose downward or substitute

departures pursuant to specific guideline provisions or to go outside the guidelines in an

unusual case, involving circumstances not contemplated by the Sentencing Commission

which promulgated the guidelines, see Section 5K2.0; 18 U.S.C. Section 3553(b). For

the reasons which follow, Baruch, through undersigned counsel, respectfully requests a

downward departure from the sentencing guidelines.

## FACTUAL BACKGROUND

Jacolyn Baruch has been plagued by obsessive compulsive behavior for most of her life. In her twenties this psychological problem was manifested by repetitive incidents of shoplifting (PSI sections 58-61, page 16). Jacolyn Baruch has been obsessed with gambling her entire adult life. Legal gambling led to illegal gambling which in time led to bookmaking activity (PSI section 41, page 13). Although from time to time Jacolyn Baruch had partners and financial backers for her gambling business, she always remained independent and did not know nor associate with members of organized crime. In late 1998 however, her independence and well being were threatened when an individual associated with organized crime attempted to gain control of her gambling business. Panicked by these threats, Jacolyn sought the advice and help of her friend and past business partner, co-defendant Jeffrey Bass. Jacolyn Baruch knew that Jeffrey Bass's gambling compulsion, unlike hers, had led him to victimization by loan sharks and that he knew the kind of people that were threatening Jacolyn. Jeffrey Bass introduced Jacolyn Baruch to co-defendant John Mamone, an organized crime associate whom Bass assured would be able to protect Jacolyn Baruch. John Mamone agreed to help Jacolyn Baruch, and apparently did, since the threats stopped and Jacolyn Baruch resumed the independent operation of her gambling business.

This protection lasted for a mere matter of weeks since Baruch's gambling business ceased upon her arrest on bookmaking charges by State authorities in January, 1999.[1] Jacolyn Baruch was placed on probation for the State charges and had to rely

---

[1] The Federal charges, which are the subject of this Indictment, relate to bookmaking activity by Baruch during the same time period as that covered by the State charges for which she is on probation.

upon legal gambling activities in order to satisfy her compulsion while avoiding probation violations. As stated in the PSI, Jacolyn Baruch has a gambling addiction that has led to several arrests over the years including the charges which are the subject of this Indictment (PSI section 73, page 18). Although she never sought treatment until last year, she was evaluated by and is still being treated by Dr. Abby Strauss, M.D. of Boca Raton, Florida. Dr. Strauss has confirmed that Jacolyn Baruch has a long-standing impulse control impairment (pathological gambler) which has prevented her from controlling her gambling activity. Dr. Strauss's report is attached hereto and incorporated herein as Exhibit A.

## DIMINISHED CAPACITY

Guidelines section 5K2.13 provides for a reduction in sentence below the guideline range "if the defendant committed the offense while suffering from a significantly reduced mental capacity". That guideline section further provides that "if a departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense".[2] In 1998, the Sentencing Commission amended section 5K2.13 and added the following application note defining the previously undefined term "significantly reduced mental capacity":

> "Significantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful. U.S.S.G. section 5K2.13, comment, (n.1)(1998).

---

[2] The rule cites three circumstances in which a departure is not authorized, none of which are applicable in this case.

This amendment to the sentencing guidelines encourages downward departures for significant impairments of a defendant's "volitional" capacities, i.e., power to resist the temptation to do wrong. This amendment is in accord with the decision in United States v. McBroom, 124 F.3d 533 (3d Cir. 1997). The McBroom court concluded that "significantly reduced mental capacity" included both cognitive impairment (inability to understand that conduct is wrong) and volitional impairment (inability to control behavior that one knows is wrong). The application note now specifically includes both types of impairments in the definition of significantly reduced mental capacity.

Although there appears to be a scarcity of cases applying this amended definition of diminished capacity, there are a few reported cases, two of which specifically deal with pathological gambling. District Judge Orlofsky in United States v. Checoura, 176 F.Supp. 2d 310 (2001) held that the 1998 amendment to the sentencing guidelines encouraged a downward departure for a compulsive gambler who embezzled millions of dollars from an employer in order to obtain money to indulge her gambling habit. The court in United States v. Sadolsky, 234 F.3d 938 (2000) similarly dealt with a gambling compulsion which led the defendant to commit fraudulent credit transactions. Even though there was no medical testimony concerning the defendant's gambling disorder, the court in Sadolsky held that lay testimony alone was sufficient to establish the defendant's reduced mental capacity in order to support the downward departure. Another court has even gone so far as to justify a downward departure for a defendant who defrauded her employer in order to obtain funds to pay debts incurred because of

compulsive shopping. <u>United States v. Roach</u>, No. 00 CR 411, 2001 WL 664438 (N.D. Ill. June 4, 2001).

It is well established that Jacolyn Baruch has for many years, as a pathological gambler, suffered from significant impulse control impairment. As a result of this disorder, she has not been able to control her gambling activity or anything related to gambling even when she knows such conduct is contrary to the law. Since her significantly reduced mental capacity was in no way caused by the use of drugs or other intoxicants; the offense in this case did not involve violence or a threat of violence; and, her criminal history does not indicate a need for incarceration in order to protect the public, Jacolyn Baruch is eligible for a downward departure under section 5K2.13 of the sentencing guidelines.

Respectfully submitted,

DAVID G. VINIKOOR, P.A.
Attorney for Defendant
420 S.E. 12th Street
Fort Lauderdale, FL 33316
Telephone: (954) 522-2500
Facsimile: (954) 522-7278

By: _____
DAVID G. VINIKOOR
FL BAR #195719

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of Notice of Request for Departure from Sentencing Guidelines been furnished by U.S. Mail delivery this _30_ day of May, 2002, to: Brian McCormick and Diana Fernandez, Assistant United States Attorneys, 500 E. Broward Boulevard, Suite 700, Fort Lauderdale, FL 33301 and to Patricia Borah, U.S. Probation Officer, 501 S. Flagler Drive, 4th Floor, West Palm Beach, FL 33401-5912.

DAVID G. VINIKOOR

**Abbey Strauss MD PA**
**1050 NW 15th Street, Suite 207A**
**Boca Raton, Florida 33486**
Phone    561-394-6110
Fax       561-394-6544
Email    astrauss@gate.net

May 20, 2002

## Psychiatric Report on
## Jacoyln Baruch

Ms. Baruch entered treatment with me in November 2001 for what she described as a gambling problem. The level of her problem has been rather significant and has caused her personal problems over the years. In addition to her gambling issues, she suffers also from a relentless social phobia, preferring to work alone or with a minimum of direct personal contact.. This phobia also influences many of her life's choices as well. During the course of therapy, she freely acknowledged that she even avoided gambling anonymous meetings because of the fear of talking about herself in public.

Gambling has existed in her family for many years. Her father was a "wheeler-dealer" who always had an "angle" to make money. At times they would be in severe financial straits because of his behaviors. However, she is the psychological reverse of her parents -- they are gregarious and outgoing, and she is quite the opposite.

Gambling has therefore been a way of life for her since childhood. She literally doesn't know a different life style. Gambling to her family was an acceptable way to make money. She says that she never knew any other way and never saw gambling as harmful.

There were times when she saw bookmaking as a easy way to make money which was not physically harming others, it fit into the world that she knew best, and because so much of it could be with via telephone contacts, it allowed her to make money and not feel threatened because she was not challenging her phobia. Note should be made that this shyness is so great that she could not relax enough to give urine samples. The fears are now peaking because she is terrified of loosing the safety net of home and familiarity if she is incarcerated. Incarceration to her is not just an annoyance or discomfort, it is a deep fear of being in endless danger.

She has developed considerable insight into her condition as a result of psychotherapy. Note that strong evidence exists that pathological gambling in part also stems from abnormal hormone levels in the brain, in particular serotonin. This produces a clinical situation very similar to an uncomfortable obsession. Consequently, we tried to use the medication Celexa because it helps correct the serotonin imbalance – unfortunately she

could not tolerate the medication. No other medications were tried because we chose to focus on a cognitive therapy approach. The therapy has produced in her more control of her impulses, and she is looking for other ways to fulfill the impulses. Furthermore, the reality of her situation is so frightening to her that she realizes and talks about just how frail she is and how much she must work on improving herself. She repeatedly commented to me that she cannot go through such a situation again in her life. Her motivation for psychological improvement is now solid and with a full commitment on her part.

Pathological gambling is a recognized psychiatric disorder. She has suffered from this for years. Her condition is further complicated because the role models she had as a child and from the social phobias which continue to control much of her life. I see a real progress in her now, and I am confident that with on-going psychotherapy, she will develop even greater ego strengths to control her gambling urges. I also expect that she will make progress with regard to her social phobias as well.

--- end of report